No. 23,231.

M. D. GONDER, *Appellant*, v. MINNIE PHARES and W. H. PHARES, *Appellees*.

### SYLLABUS BY THE COURT.

1. CONTRACT—*Sale of Land—Action to Rescind—Cross-petition—Damages for False Representation—Demurrer to Evidence.* Plaintiff sued to cancel a contract for the sale of land on the ground that the purchaser had failed to make payments when due and asked judgment for damages and for possession. In her cross-petition defendant asked damages sustained because of the fraudulent representations of the plaintiff respecting the land. Her cross-petition was based on the theory of a rescission of the contract. *Held*, under the circumstances, the plaintiff was not prejudiced by the overruling of a demurrer to the evidence under the cross-petition and the overruling of a motion for judgment on the pleadings, by which he attempted to raise the point that the cross-petition made no tender of a deed and no tender of possession.

2. SAME—*Evidence Sustains Judgment on Cross-petition.* Evidence considered and held sufficient to sustain a judgment against the plaintiff

Gonder v. Phares.

on the cross-petition for damages resulting from his fraudulent representations respecting the land.

3. SAME—*Defendant Not Estopped to Rescind Contract and Claim Damages*. Although the undisputed evidence showed that defendant offered at different times prior to October 1 to pay $2,000 due under the contract at that time she was not, as a matter of law, thereby estopped to rescind the contract and to claim damages, in view of evidence to the effect that plaintiff persuaded her to remain on the land and to allow the contract to stand under a promise to procure a purchaser at a price which would recoup the losses she had sustained by entering into the contract.

4. SAME—*Possession of the Land—Form of Judgment*. The failure of the judgment to order possession of the land given to the plaintiff, under the facts stated in the opinion, held not ground for a reversal, as it is not too late for the plaintiff to ask the trial court to order possession surrendered to him.

Appeal from Gray district court; LITTLETON M. DAY, judge. Opinion filed June 11, 1921. Affirmed.

*C. M. Williams*, and *D. C. Martindell*, both of Hutchinson, for the appellant.

*Will N. Bendure*, of Cimarron, and *C. C. Wilson*, of Meade, for the appellee.

The opinion of the court was delivered by

PORTER, J.: The action was brought by the appellant for the rescission and cancellation of a contract for the sale of a quarter section of school land, on the ground that the appellees had failed to make payment of the purchase price according to the terms of the contract. Mrs. Phares, who is the principal appellee, her husband being joined with her, filed an answer and cross-petition admitting the execution of the contract, the payment of $2,500 on the purchase price by the endorsement of a note to the appellant which he had collected; admitting the failure to pay $2,000 due on October 1, 1919, and subsequent payments, and alleging that she was induced to purchase the land by the fraudulent representations of the appellant as to the quality, character and boundaries of the land. She asked to recover as damages the $2,500 and interest, and expenses incurred in moving from her home in Stafford county and in taking possession of the land. There was a general verdict in her favor for $3,027 and with the verdict the jury returned a number of special findings.

A number of trial errors are complained of, but the principal contentions are that the court should have sustained a demurrer to the evidence under the cross-petition, and should have given judgment in appellant's favor on the pleadings and evidence. Error is also assigned with relation to the instructions and the overruling of the motion for a new trial.

The appellant, M. D. Gonder, is a real-estate agent at Cimarron. Mrs. Phares and her husband owned a farm in Stafford county which they sold in January, 1919, and were looking for another place. In company with her husband and two real-estate agents, Mrs. Phares went to Gray county and examined land there. The agents introduced her to Mr. Gonder who took her and her husband to look at the land on January 29.

Mrs. Phares testified in substance as follows: She was but a child when she came to this country, has never attended school and is unable to read and understand English very well. It was late in the evening and quite dark when they got to the land. The ground was covered with snow so deep that there was difficulty in getting there with the auto. The appellant told her the land was all hard land and would be all right. She was not able to get out and make an examination of the land. Mr. Gonder took her into the house, lighted a lamp, showed her the bathroom, tank heater and other conveniences. He told her that he was a good Christian and never liked to beat a woman in a trade. She had full confidence in him and they shook hands and she agreed to take the land. The contract was executed the same day and Mrs. Phares endorsed to the appellant a note for $2,500 as the first payment. She moved from Stafford county and reached the place on the 29th of March. The next day she examined the land and discovered that it consisted mostly of what is called blow sand, and was of little value. The wheat, which had been represented to her as good, was blowing out. Mr. Gonder came to the place the next day and she offered him $500 to release her from the contract and give her back $2,000 of her money. It was at this time that he made the misrepresentations as to the boundary line, telling her that there were 16 acres on the other side of a fence that belonged to the land she had bought. She discovered afterwards that the fence was the boundary line and that the owner on the other side

claimed the 16 acres.   Mr. Gonder came to the place shortly afterwards and she offered him $1,000 if he would release her from the contract.   He assured her that if she would remain where she was and farm the land he would sell it for her for $9,000.   Her testimony is: "He said the war is on and everything goes up, and he says if you stay there and work right good and farm it good he says when the corn looks best in August positive I will sell it, and well he come up to me and he shakes hands two or three times and he says woman I will have that sold, now he says, mind what I say; when I say anything I mean it; mind what I say I will have that place sold before the last of August."   An additional agreement was then signed by Mr. Gonder and herself by which she was to pay him a certain commission for selling the land and she agreed that if he received anything from the purchaser she was not to complain.

Several witnesses testified that they were familiar with the land.   They had made an examination of it and had dug holes in places in the cultivated part which demonstrated that it was blow sand for a distance of two and one-half feet from the surface.   There was some testimony tending to show that a half section of land in the immediate vicinity and of the same general quality had sold for $10,500.   The price which Mrs. Phares was to pay for the quarter section was $8,500.

The appellant's testimony and that of his son and some of the real-estate agents who were assisting in the trade and others, contradicted that of Mrs. Phares' witnesses, but the most that can be said is that there was a sharp conflict in the testimony not only as to the representations but other matters. The contention, however, that the court erred in submitting the issues of fact to the jury cannot be sustained.

One of the main contentions is that the cross-petition stated no cause of action because of the failure to allege a tender to the appellant of a deed and possession of the land, and that as she was seeking by her cross-petition to recover damages on the theory of a rescission on the ground of fraud, it was necessary for her to tender a conveyance and possession. This point seems to have been raised merely by a demurrer to the evidence and by a motion for judgment on the pleadings. The court's attention does not seem to have been specifically called to any defect in the cross-petition.   It may be conceded that it

was defective in this respect, but the appellees' testimony showed that on two occasions after she discovered the fraudulent representations respecting the land she begged the appellant to release her from the contract and offered to let him retain a considerable portion of the first payment. The appellant understood, of course, that he was to have the title and possession of the land if he accepted either of these propositions. It is apparent, too, that a tender would have been of no practical effect; it would never have been accepted. The position of the appellant has been from the first that there was no defense to the contract and that because of the failure to make the subsequent payments of the purchase price he was entitled to have it canceled and a judgment for the possession of the land.

Another of the principal contentions urged is that because the undisputed testimony showed that appellee offered at different times prior to October 1 to pay to appellant $2,000 due at that time under the contract she thereby estopped herself to set up a claim to recover damages on the theory of a rescission of the contract, and it is contended that the question of estoppel on the undisputed testimony became a question of law for the court and not for the jury. A sufficient answer is that Mrs. Phares' testimony, which the jury accepted as true, shows that after she had informed appellant of her discovery that she had been defrauded he persuaded her to remain on the land and cultivate it and allow the contract to stand (which, of course, required her to make the payments when due), and that if she would do this he would procure a purchaser at a price which would be sufficient to recoup any losses she had sustained by entering into the original contract. At the time she made the offers of payment the subsequent agreement had not been carried out, and doubtless Mrs. Phares at that time was unwilling to risk the loss of everything by a failure on her part to comply with the contract. She frankly admits in her testimony that she tried to make the payments before they were due. Afterwards she determined, apparently, to make no further payments. It cannot be said that as a matter of law she was estopped by offering to pay at a time when she was relying upon appellant's agreement to resell the land. The jury probably gave the same explanation to the

Gonder v. Phares.

testimony showing that she did not complain to her neighbors and others about being dissatisfied with the land and even went so far as to make statements indicating that she was satisfied with her contract. The court properly instructed the jury on the issue.

There is a complaint that the court erred in submitting to the jury the issue of the fraudulent representations respecting the boundaries, because the testimony showed that these representations were made after the execution of the contract. It is true the evidence is silent as to representations in respect to boundaries except those made when Mrs. Phares first informed appellant that she had discovered the fraud. Her theory is that these representations were made as an inducement for her to abide by the contract and to remain where she was, until, by his subsequent agreement to find a purchaser for the land, he had lulled her into security. Moreover, the principal representations upon which Mrs. Phares relied were those relating to the character of the soil—the quality of the land. Upon that issue there was sufficient evidence to sustain the verdict and special findings.

The appellant complains of the failure of the judgment to protect his rights by ordering possession of the land given to him. He brought the action in the first place to recover possession and for cancellation of the contract. The judgment against him on the cross-petition rests upon the theory that the contract has been rescinded, not by the appellant but by the appellees. Moreover, by merely calling the attention of the court to the fact that, notwithstanding the general verdict, he was entitled to judgment for possession, appellant's rights would have been protected in the journal entry of judgment; and it is not too late for him to ask the court to give him that relief. There is a statement in the brief of the appellees that Mrs. Phares moved from the place after the judgment and that she makes no claim of any right to possession. It is apparent that it would be folly to order another trial on the ground that the cross-petition made no offer to return possession or because the trial court's attention was not called to the fact that appellant was entitled to possession.

We discover in the record no error prejudicial to the appellant, and the judgment is affirmed.